UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PAUL ANTHONY CRAYTON, § | | |
| TDCJ #1886839 § | | |
| § | | |
| Petitioner, § | | |
| VS. § | CIVIL ACTION NO. 3:16-CV-0101 | |
| § | | |
| LORIE DAVIS, § | | |
| § | | |
| Respondent. § | | |

## MEMORANDUM OPINION AND ORDER

State inmate Paul Anthony Crayton, who proceeds *pro se*, has filed a petition for a federal writ of habeas corpus (Dkt. 1) and a supporting memorandum (Dkt. 2) seeking relief from a state court conviction. Respondent Lorie Davis filed a motion for summary judgment (Dkt. 17) and a copy of the state court records (Dkt. 15, Dkt. 16). Petitioner has not filed a response to the summary judgment motion, and the time to do so has expired. The motion is ripe for decision. Having now considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that summary judgment should be **granted** for Respondent and that the petition should be **dismissed**.

I.    **BACKGROUND**

   A.    **Procedural Background**

Petitioner Crayton is serving a 75-year sentence for murder and a concurrent 20-year sentence for aggravated assault. Crayton was tried before a jury in the 212th

Judicial District Court for Galveston County, Texas, Hon. Susan E. Criss presiding. *See* Dkt. 16-26, at 38-41 (Judgment, Case No. 11-CR-2593 (murder)); Dkt. 16-29, at 38-41 (Judgment, Case No. 11-CR-2594 (aggravated assault)).[1] The Court entered judgment and sentence on October 24, 2013.

Crayton appealed both convictions to the Fourteenth Court of Appeals, Cases No. 14-13-01021-CR and No. 14-13-01022-CR. On February 24, 2015, the appellate court affirmed in both cases. *Crayton v. State*, 463 S.W.3d 531 (Tex. App.–Hou. [14th Dist.] Feb. 24, 2015, no pet.); *see* Dkt. 16-19. Crayton did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Crayton then filed a *pro se* state habeas applications for each conviction. Each application was docketed with the trial court on February 9, 2016. *See* Dkt. 16-26, at 3-20 (WR-84,666-01 (murder)); Dkt. 16-29, at 3-21 (WR-84,666-02 (aggravated assault)). On February 17, 2016, the trial court entered Findings of Fact and Conclusions of Law recommending that relief be denied (Dkt. 16-26, at 33-34; Dkt. 16-29, at 33-34). On March 30, 2016, the Texas Court of Criminal Appeals denied both applications on the trial court's findings without written order (Dkt. 16-24; Dkt. 16-27).

On April 12, 2016, Petitioner timely executed a *pro se* petition for writ of habeas corpus (Dkt. 1) in these proceedings.

B. **Factual Background**

---

[1] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

Petitioner was convicted for the murder of James Martin and for aggravated assault of Derrick Yell. The appellate court summarized the facts as follows:

> Appellant Paul A. Crayton shot complainant James Martin several times in the parking lot of the Bourbon Street Bar. Appellant then re-entered the bar. Complainant Derrick Yell ran to the restroom and barricaded himself against the door. Appellant tried, but failed to push the door open and so resorted to firing shots through the door. Appellant then fled. On the way out of the bar, appellant fired additional shots at Martin, who lay wounded on the ground. Martin died.
>
> Appellant was indicted for Martin's murder and for the aggravated assault with a deadly weapon of Yell. Appellant pleaded "not guilty" to each charge.
>
> At trial by jury, appellant admitted to the conduct, but claimed he acted in self-defense. Appellant testified that he had conversations with Martin and Yell on two occasions before the incident at the Bourbon Street Bar. According to appellant, in the first conversation, Martin accused appellant of lying; in the second conversation, Martin accused appellant of threatening to harm Martin or one of Martin's family members and Martin threatened to retaliate. Appellant testified that when he arrived at Bourbon Street Bar, he saw Martin and Yell whispering to each other and appellant thought that Martin and Yell looked like they were going to harm him. Appellant testified that outside the bar, Martin pulled a gun and appellant shot him. According to appellant, appellant went back into the bar because he knew that Yell would harm him. On the way out, according to appellant, Martin was still fumbling with his gun and so appellant shot him as appellant left.
>
> Yell testified that he had encountered appellant before the incident at Bourbon Street Bar and on that previous occasion appellant had stated that he thought Martin and Yell had "snitched" on him and informed federal authorities that appellant had committed crimes related to drug use and distribution. A patron of the bar who had known appellant since appellant was a child and who had purchased appellant a beer that evening, testified that appellant informed him that some individuals in that bar were going to die that evening. After the shooting, appellant evaded authorities for months. When appellant was finally arrested, he immediately stated to the arresting officer, "You finally got me."

*Crayton*, 463 S.W.3d at 533-34.

On October 15, 2013, the day that voir dire proceedings for Crayton's trial began, the Galveston Daily News published an article about the case (Dkt. 16-9, at 36-38) (the "Article"). The Article was on the front page, above the fold, and was accompanied by a photo of Crayton (*id*. at 36-37). It reported that, during pretrial proceedings the day before, Judge Criss had granted the defense's motion to suppress a firearm seized during the homicide investigation.[2] The Article also reported that the judge was considering a motion to suppress what prosecutors called a "kill list," which had names of nineteen persons whom Crayton purportedly had wanted to kill (*id.* at 38). According to the Article, one prosecutor had stated that the "kill list" contained the name of the murder victim and that the name was "scratched through" (*id.*). In court on October 15, the prosecutor stated that the victim's name in fact was not scratched through and that her representation on the previous day had been in error (Dkt. 15-15, at 5).

At voir dire, before any venire members were questioned, defense counsel moved for a mistrial based on the Article (*id*. at 63-64). The court denied the motion but stated that the potential jurors would be questioned about their exposure to the Article (*id*. at 65). The judge then called the panel in, instructed them generally about why jurors'

---

[2] The Article also contained detail about how law enforcement had found the suppressed firearm. *See id*. at 38 ("Police searched for Crayton for months, finally arresting him Sept. 7 in Houston. Two days after Crayton's arrest, a detective went to the Galveston County Jail and searched his cellphone without a warrant . . . A detective testified he found the names of 10 people on Crayton's phone. One of them led to the discovery of a woman, who . . . allowed police to search her residence, and officers seized a bag which contained a firearm, testimony revealed. The firearm was tested, but there was no further testimony Monday about how the firearm related to the case.")

exposure to media coverage could be problematic, and informed the panel that the attorneys would be asking them questions (*id.* at 67-68). Upon examination, twelve venire members (No. 9, No. 24, No. 25, No. 30, No. 33, No. 50, No. 62, No. 68, No. 69, No. 72, No. 75, No. 79) indicated some exposure to the Article (*id.* at 68-78). Of the twelve, several said that, based on the Article, their mind had been made up (*see, e.g., id.* at 71-73 (No. 24, No. 30, and No. 33). The entire venire panel was present for the questioning of the venire members who had seen the Article and heard some say that it had influenced them. However, the questioning did not disclose any information from the Article (*id.* at 68-78).

At the bench, out of the venire panel's hearing, defense counsel made a second motion for mistrial "based on the comments the jurors have made" and specifically cited to Venireperson No. 33's statement that defense counsel would have to do a "really good job to change his mind" (*id.* at 74). The court denied the motion, stating, "[A]t this point it's denied" (*id.*).

None of the twelve venire persons who had been exposed to the Article were seated on the jury. *See* Dkt. 15-3, at 10-19 (strike lists); *id.* at 20 (jury list). After the jurors were sworn in, the judge gave them additional instructions not to take information from the internet, television, newspapers, social media, "or elsewhere," and not to discuss the case or listen to anyone discussing it (Dkt. 15-17, at 7). She further instructed them that any juror should tell her immediately if "you know of or learn of anything about the case except from the evidence admitted during the course of the trial" (*id.* at 6).

On direct appeal, Crayton raised the issue of adverse pretrial publicity from the Article, among other issues. The appellate court held that the trial court had not abused its discretion in denying either motion for mistrial (Dkt. 16-19, at 8-12). Regarding the first motion, the court affirmed the denial because at the time of the motion no venire members had been questioned about exposure to the Article, and thus "there was no evidence that any venire member had read the article, let alone been influenced by its contents" (*id*. at 10) (citing *Ocon v. State*, 284 S.W.3d 880, 885 (Tex. Crim. App. 2009)). Regarding the second motion, the court held that the trial court did not err in denying the motion based on Venireperson No. 33's responses because the juror's statement "did not rise to the level of an 'extreme circumstance' that was 'incurable'" (*id*. at 11 (citing *Ocon*, 284 S.W.3d at 884; *Logan v. State*, 698 S.W.2d 680, 683-84 (Tex. Crim. App. 1985)).

The appellate court declined to address Petitioner's claim under the Sixth Amendment, holding that Petitioner's counsel had failed to preserve Sixth Amendment error at trial and limiting its review to trial counsel's motions for mistrial. *See id*. at 7-8 (citing TEX. R. APP. P. 33.1(a); *Austin v. State*, 222 S.W.3d 801, 811 (Tex. App.—Hou. [14th Dist.] 2007, pet. ref'd)). One appellate judge wrote a separate concurrence opining that Crayton's counsel had preserved the broader Sixth Amendment argument (Dkt. 16-20, at 2-5).[3] However, the concurrence ultimately concluded that Crayton's Sixth

---

3   *See id*. at 4-5 ("At the time of the second motion, [defense] counsel knew that at least five veniremembers had seen the [Article] and four of them were biased against appellant as a direct result of the [A]rticle. Counsel referenced the comments of the 'jurors' (plural) when the

Amendment claim lacked merit because, among other factors, all venirepersons exposed to the Article had been struck from the panel and the judge had provided adequate instructions to the seated jurors (*id.* at 5-7 (citing *Gonzalez v. State*, 222 S.W.3d 446 (Tex. Crim. App. 2007); *Esquivel v. State*, 595 S.W.2d 516 (Tex. Crim. App. 1980); *Henley v State*, 576 S.W.2d 66 (Tex. Crim. App. 1978)).

Crayton filed a state habeas application for each conviction. Both applications raised the same two issues: (1) the Article had prejudiced the members of his venire and (2) he had been denied a fair trial before an impartial jury because the panel had been prejudiced by the Article but the judge twice denied a mistrial (Dkt. 16-26, at 3-20; Dkt. 16-29, at 3-21). The trial court issued Findings of Fact and Conclusions of Law recommending that habeas relief be denied. In its entirety, the Court's analysis for each application read:

> This Trial Court, having reviewed the application for writ of habeas corpus pursuant to article 11.07 of the Texas Code of Criminal Procedure, finds that there is ample evidence in the record to rule on the relief sought. Therefore, there is no need for a fact-finding hearing.
>
> The Trial Court further finds that pursuant to art. 11.07, sec. 3(c), C.C.P., there are no controverted, unresolved facts which are material to the legality of the Applicant's confinement, and that Applicant's claims have no legal merit. This Trial Court recommends that relief be denied.

(Dkt. 16-26, at 33-34; Dkt. 16-29, at 33-34). The Texas Court of Criminal Appeals denied both writ applications on the trial court's findings without written order (Dkt. 16-24; Dkt. 16-27).

---

motion was made . . . Counsel used the example of the last veniremember to support the motion, but the motion was not focused on that one comment alone").

## II. LEGAL STANDARDS

### A. *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal quotation marks and citation omitted). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B. The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and

the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under the AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 517 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citation and quotation marks omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the

state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (internal citation and quotation marks omitted).

On factual issues, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

### C. <u>Summary Judgment Standard in Habeas Corpus Proceedings</u>

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary

judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

### III. ANALYSIS

Crayton's federal petition lists four claims for relief, all of which concern the venirepersons' exposure to the Article: (1) his voir dire proceedings were improperly influenced by the Article regarding a suppressed firearm and a "kill list," which twelve venirepersons saw or heard about; (2) he was denied a fair trial with an impartial jury when some venire members answered questions about the Article in front of the entire venire panel and a mistrial was denied; (3) the trial court improperly denied trial counsel's motion for a mistrial based on prejudice to the Petitioner from the Article; and (4) his trial was tainted by a "constitutional violation" because the prosecution was responsible for the adverse publicity, which was not cured by the judge's instructions (Dkt. 1, at 6-7). His four arguments will be addressed as two issues: first, that he was denied his Sixth Amendment right to a fair trial before an impartial jury (Claims 1, 2, and 4); and second, that the trial court erred when denying his motions for a mistrial (Claims 2 and 3).

### A. Sixth Amendment Claim

Petitioner claims that he was deprived of his Sixth Amendment right to a fair trial because twelve venirepersons were exposed to the Article and thus prejudiced against him, and because the entire panel (including members eventually seated on the jury) heard comments from venirepersons who had been exposed to the Article. He further argues that the judge's instructions did not cure the prejudice. In his memorandum, Petitioner states that he is raising the broader Sixth Amendment argument identified by the concurring opinion on direct appeal (Dkt. 2, at 1). Petitioner mostly tracks the analysis in the concurring opinion but then reaches the opposite conclusion, arguing that the factors identified in the opinion weighed in favor of granting a mistrial (*id*. at 4-7).

The Sixth Amendment guarantees a criminal defendant the right to a fair trial before an impartial jury. *Skilling v. U.S.*, 561 U.S. 358, 377 (2010); *Mayola v. State of Ala.*, 623 F.2d 992, 996 (5th Cir. 1980). The Supreme Court has held that juror impartiality does not require that jurors be ignorant of the facts or issues involved. *Skilling*, 561 U.S. at 381 ("'scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case'" (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Rather, a defendant seeking relief due to adverse pretrial publicity "ordinarily must demonstrate an actual, identifiable prejudice attributable to that publicity on the part of members of his jury." *Mayola*, 623 F.2d at 996. If a juror has a "preconceived notion" as to the accused, but can nevertheless render a verdict based on the evidence, the juror is sufficiently impartial:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*U.S. v. Lipscomb*, 299 F.3d 303, 344 (5th Cir. 2002) (internal quotation marks and citations omitted). Even in cases of "inflammatory" pretrial publicity that "saturates" a community, raising a presumption of prejudice to the defendant, the prosecution "can usually rebut this presumption through voir dire that ferrets out such prejudice." *Id.* (discussing *Rideau v. Louisiana*, 373 U.S. 723 (1963)).

Respondent argues that some of Petitioner's Sixth Amendment claims are procedurally barred because they are "based upon objections to or comments made by venire members other than number 33." *See* Dkt. 17, at 10 n. 2. Federal habeas review is procedurally defaulted if a state court "clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Rocha v. Thaler*, 626 F.3d 815, 820 (5th Cir. 2010) (internal quotation marks and citation omitted). As stated above, the appellate court held that Petitioner had failed to preserve error beyond the arguments raised in his two motions for mistrial, basing its holding on Texas Rule of Appellate Procedure 33.1(a). *See* Dkt. 16-19, at 8 (citing TEX. R. APP. P. 33.1(a); *Austin*, 222 S.W.3d at 811).[4] Because this ruling was based on an independent and adequate state

---

[4] The state habeas court did not enter an order explaining its reasoning for denying relief on this claim. *See* Dkt. 16-26, at 33-34 (on habeas review, state trial court determined without elaboration that "there are no controverted, unresolved facts which are material to the legality of the Applicant's confinement, and that Applicant's claims have no legal merit"); Dkt. 16-29, at

ground, it bars federal review of those claims that the appellate court dismissed as unpreserved.

In any event, Petitioner's Sixth Amendment argument lacks merit. The fact that some venirepersons had formed an impression based on the Article is insufficient to show a violation of Petitioner's Sixth Amendment rights. As stated above, no member of the panel who had been exposed to the Article actually served on the jury. A claim that a jury was not impartial "must focus . . . on the jurors who ultimately sat." *Ross v. Okla.*, 487 U.S. 81, 85-86 (1988); *see Jones v. Dretke*, 375 F.3d 352, 356 (5th Cir. 2004); *Mayola*, 623 F.2d at 996. Moreover, to the extent Petitioner argues that the seated jurors, none of whom had seen or heard about the Article, were influenced when they heard the attorneys question other venirepersons about the Article, mere exposure to publicity is insufficient to demonstrate a constitutional violation. *See Skilling*, 561 U.S. at 381 (ignorance of the facts or issues involved is not required). Petitioner does not identify any seated jurors who purportedly were prejudiced, and identifies no reason why the voir dire in this case was not sufficient to ensure jurors who would "render a verdict based on the evidence presented in court." *See Lipscomb*, 299 F.3d at 344; *U.S. v. Beckner*, 69 F.3d 1290, 1291-92 (5th Cir. 1995).

---

33-34 (same). Therefore, the Court looks to the appellate opinion as the "last reasoned opinion" on the issue. *See Wilson*, 138 S. Ct. 1194-95 ("'where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits,'" quoting *Ylst v. Nunnemaker*, 510 U.S. 797, 803 (1991)); *Caldwell v. Davis*, __ F. App'x ___, 2018 WL 6600968, at *3 (5th Cir. Dec. 13, 2018) (looking through state habeas proceedings to "last reasoned opinion," which was issued on direct review).

For all of the foregoing reasons, Petitioner has failed to demonstrate that the state appellate court, which issued the last reasoned opinion on his claims, made a determination was contrary to clearly established federal law or an unreasonable application of the law to the facts of his case. *See* 28 U.S.C. § 2254(d). Habeas relief therefore is denied.

B. **Mistrial Rulings**

Petitioner also argues that habeas relief is warranted because the trial court erred when it denied his counsel's two motions for a mistrial based on the Article. His second and third grounds for relief state as follows:

> Fair Trial with Impartial Jury Denied[:] Some voir[] dire members admitted reading the newspaper the morning of voir[] dire and w[ere] question[ed] by the trial judge after that she instructed the panel members not to discuss the article but some had admitted to that already in front of the whole panel [and] also what they thought about defendant's guilt or innocence. Mistrial denied.
>
> Motion for Mistrial Denied[:] Defense counsel stated that defendant could not receive a fair trial after a prejudiced newspaper article was presented. Defense counsel offered the article into evidence stated grounds for objection and ask[ed] for mistrial and was denied.

(Dkt. 1, at 6-7; *see* Dkt. 2, at 4-7 (citing *Ocon*, 284 S.W.3d at 884; *Gonzalez*, 222 S.W.3d at 449; *Esquivel*, 595 S.W.2d at 519)). This issue was squarely presented to, and decided by, the state court, which held on direct appeal that the trial court did not abuse its discretion in denying either motion for mistrial. *See* Dkt. 16-19, at 9-12) (citing, *inter alia*, *Ocon*, 284 S.W.3d at 884-85; *Logan*, 698 S.W.2d at 683-84). *See also* Dkt. 16-20

(concurring opinion concluded that the trial court did not abuse its discretion when denying motions for mistrial).

"Federal habeas relief cannot be had absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (internal quotations and citation omitted). Given that no venirepersons who were exposed to the Article were actually seated on the jury, Petitioner has not shown that the trial court's denial of his motion for a mistrial was an error "'so extreme that it constitutes a denial of fundamental fairness'" under the Due Process Clause. *See Hernandez v. Dretke*, 125 F. App'x 528, 529 (5th Cir. 2005) (quoting *Bridge v. Lynaugh,* 838 F.2d 770, 772 (5th Cir. 1988)); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). Additionally, the harmless error standard applies in these habeas proceedings and requires a petitioner to show "a substantial or injurious effect" on the verdict in his case. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993); *Dorsey v. Stephens*, 720 F.3d 309, 318 (5th Cir. 2013). Because Petitioner has not shown an identifiable prejudice on the part of any seated juror, he fails to make the required showing under *Brecht*.

For all of the foregoing reasons, Petitioner has failed to demonstrate that the state appellate court, which issued the last reasoned opinion on his claims, made a determination was contrary to clearly established federal law or an unreasonable application of the law to the facts of his case. *See* 28 U.S.C. § 2254(d). Habeas relief therefore is denied.

## IV. CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks omitted). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir.

2000). After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Respondent's motion for summary judgment (Dkt. 17) is **GRANTED**. The petition for a writ of habeas corpus (Dkt. 1) is **DISMISSED**.

2. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 22nd day of February, 2019.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge